# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE PEPE, PATRICIA DONADIO, JUNE VONDERCHEK, and JOSEPH SANDERS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>4E BRANDS NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No. 7:20-cv-06494-VB<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT** |

Plaintiffs Katherine Pepe, Patricia Donadio, June Vonderchek, and Joseph Sanders ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against 4e Brands North America, LLC ("4e Brands" or "Defendant") for the manufacture, marketing, and sale of various hand sanitizer products identified below. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiffs themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action against Defendant 4e Brands for the manufacture and sale of Assured Aloe Hand Sanitizer, Assured Clear Hand Sanitizer, Assured Instant Hand Sanitizer (Vitamin E and Aloe), Assured Instant Hand Sanitizer (Aloe and Moisturizers), Blumen Antibacterial Fresh Citrus Hand Sanitizer, Klar and Danver Instant Hand Sanitizer, Hello Kitty by Sanrio Hand Sanitizer, the Honeykeeper Hand Sanitizer, Blumen Instant Hand Sanitizer, Blumen Advanced Clear Hand Sanitizer, Blumen Aloe Advanced Hand Sanitizer, Blumen Advanced Hand Sanitizer, Blumen Clear Hand Sanitizer, Blumen Clear Tea Tree Hand Sanitizer,

and Modesa Clear Gel Antibacterial[1], (collectively, the "Products" or "Hand Sanitizer Products"), all of which suffer from an identical defect. The Products are defective because they are labeled as containing ethanol as the active ingredient, but are in fact contaminated with and contain methanol (the "Defect"), which is toxic and can cause death. Each of the Products suffer from the same material Defect – contamination with and presence of methanol. Exposure to methanol can result in nausea, vomiting, headache, blurred vision, permanent blindness, seizures, coma, permanent damage to the nervous system or death. The presence of methanol renders the Products unsuitable for their principal and intended purpose and renders them worthless.

2.    Each of the Products is prominently labeled as a "Hand Sanitizer" on the front of the label, and list Ethyl Alcohol 70% on the back of the label as the "active ingredient." None of the Products mention or disclose that the Products are contaminated with methanol, or that the "active ingredient" is in fact to a large extent methanol, not Ethyl Alcohol – or "ethanol." But the distinction is critical. Ethyl Alcohol is an accepted active ingredient for hand sanitizers, while methanol is a toxic substance that cannot be consumed by or come in contact with humans, and makes the Products wholly toxic, worthless, and unsuitable for use as hand sanitizers.

3.    Plaintiffs bring claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for (I) breach of express warranty; (II) breach of implied warranty of fitness; (III) unjust enrichment; (IV) violation of New York's General Business Law, GBL § 349; (V) violation of New York's General Business Law, GBL § 350; (VI) negligent misrepresentation, and (VII) violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56: 8-1, *et seq.*

## PARTIES

4.    Plaintiff Katherine Pepe is, and at all times relevant to this action has been, a resident of Newburgh, New York. Plaintiffs Pepe has purchased 4e Brands products in the wake

---

[1] The list of products includes products of similar name varying in sizes. The list of products is not exclusive as discovery may lead to additional products which were contaminated. The UPC Code and list of products can be found at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/4e-brands-north-america-issues-expanded-nationwide-voluntary-recall-hand-sanitizer-due-potential (last accessed August 10, 2020).

of the novel coronavirus ("COVID-19") pandemic, for the purpose of using the products as a hand sanitizer for her personal use. Plaintiff Pepe purchased Blumen Clear Advanced Hand Sanitizers (UPC No. 814266024096) from Instacart and Shoprite Grocery Store in New York. Plaintiff purchased the hand sanitizers in March 2020. Plaintiff Pepe purchased Defendant's Products in reliance on the Products' labels, including statements that the Products were hand sanitizers with ethanol as the active ingredient, and believed that the Products were safe to use as hand sanitizers. Plaintiff Pepe would not have purchased the Products had she known that there was a significant risk that the Products were unfit to perform their intended purpose and were dangerous. Plaintiff Pepe would not have purchased the Products had she known that the Products suffered from the Defect. Plaintiff Pepe still has Products that she purchased remaining in her possession but can not use the Products due to the Defect and thus suffered economic loss.

5. Plaintiff Patricia Donadio is, and at all times relevant to this action has been, a resident of Farmington, New York. Plaintiff Donadio purchased 4e Brands hand sanitizer, Assured Instant Hand Sanitizer (UPC No. 639277490704), on March 20, 2020 at the Dollar Tree Store in New York. Plaintiff Donadio suffered personal injury caused by the Defect in the Products, which caused her hands to turn red. Plaintiff Donadio attempted to return the product to the Dollar Tree Store in light of the Defect, but was denied a refund. Plaintiff Donadio purchased Defendant's Products in reliance on the Products' labels, including statements that the Products were hand sanitizers with ethanol as the active ingredient, and believed that the Products were safe to use as hand sanitizers. Plaintiff Donadio would not have purchased the Products had she known that there was a significant risk that the Products were unfit to perform their intended purpose and were inherently dangerous. Plaintiff Donadio would not have purchased the Products had she known that the Products suffered from the Defect. Plaintiff Donadio still has Products that she purchased remaining in her possession but can not use the Products due to the Defect, and has not been able to return the Products for a refund, and thus suffered economic loss.

6. Plaintiff June Vonderchek is, and at all times relevant to this action has been, a resident of Interlaken, New York. Plaintiff Vonderchek purchased 4e Brands hand sanitizer,

Bluemen Clear Hand Sanitizer (UPC No. 814266023747) on April 30, 2020, at Sam's Club grocery store in New York. Plaintiff Vondercheck purchased Defendant's Products in reliance on the Products' labels, including statements that the Products were hand sanitizers with ethanol as the active ingredient, and believed that the Products were safe to use as hand sanitizers. Plaintiff Vonderchek would not have purchased the Products had she known that there was a significant risk that the Products were unfit to perform their intended purpose and were inherently dangerous. Plaintiff Vonderchek would not have purchased the Products had she known that the Products suffered from the Defect. Plaintiff Vonderchek still has Products that she purchased remaining in her possession but can not use the Products due to the Defect and thus suffered economic loss.

7.     Plaintiff Joseph Sanders is a citizen of New Jersey residing in Montclair, New Jersey. Mr. Sanders purchased two one liter bottles of 4E Brands Hand Sanitizers in April, 2020 in New Jersey. Plaintiff Sanders purchased Defendant's Products in reliance on the Products' labels, including statements that the Products were hand sanitizers with ethanol as the active ingredient, and believed that the Products were safe to use as hand sanitizers. Plaintiff Sanders would not have purchased the Products had he known that there was a significant risk that the Products were unfit to perform their intended purpose and were inherently dangerous. Plaintiff Sanders would not have purchased the Products had he known that the Products suffered from the Defect. Plaintiff Sanders also suffered personal injuries from using the Products caused by the Defect, including vision issues, headaches, and dizziness.

8.     Plaintiffs were each exposed to the representations on the Products' labels, and those representations became a basis of the bargain.

9.     Defendant 4e Brands North America, LLC is a limited liability corporation with its principal place of business at 17806 w. Interstate 10 STE 300 San Antonio, Texas, 78257-8222. Defendant manufactures, markets, and distributes the Products throughout the United States, including in New York.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with the State of New York.  Defendant is registered to do business in the State of New York.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiffs purchased the Products in this District and reside in this District.

**FACTUAL ALLEGATIONS**

**I.      The Defect And Ensuing Recall**

13.     Defendant 4e Brands is a multinational corporation and is a part of the Soap and Other Detergent Manufacturing Industry.  Defendant's brand name products include Blumen Hand Sanitizer, Assured Hand Sanitizers, and various other hand sanitizers and hand soaps.  Throughout its website, Defendant boasts of making a "positive change in your life," and "promoting a good and healthy well-being."  Unfortunately for many consumers who purchased these Products, they were not purchasing products that would "make a positive change in their lives," or that will promote a good and healthy well-being.

14.     Indeed, the 4e Brands Products are defective and pose a significant health risk because they are contaminated with methanol.  Exposure to methanol can result in nausea, vomiting, headache, blurred vision, permanent blindness, seizures, coma, permanent damage to the nervous system or death.  The Defect renders the Products unsuitable for their principal and intended purpose.  The Defect also renders the Products worthless.  For all of the Products that

Defendant sold, the Defect is substantially likely to materialize during the useful life of the product. Simply put, the Defect renders the Products not suitable for human use or consumption.

15.     Following are representative images of the Products that Plaintiffs and other class members purchased:



16.     Any reasonable consumer, including Plaintiffs, reading the Products' labels would understand and expect that the hand sanitizers contained only ethyl alcohol as an active ingredient and that the Products were intended to be used as hand sanitizers; no reasonable consumer would expect that the Products contain toxic methanol and cannot be used as hand sanitizers.

17.     The FDA in June 2020 issued an initial warning to consumers about hand sanitizer products which contained methanol. The initial warning suggested that the products were manufactured by Eskbiochem manufacturers, which led to voluntary recalls by Eskbiochem. On July 2, 2020 the FDA issued a second press release to further warn and protect consumers and manufacturers regarding hand sanitizer products that contain and were contaminated by the presence methanol, stating bluntly that methanol "is not an acceptable active

ingredient for hand sanitizer products and can be toxic when absorbed through the skin as well as life-threatening when ingested." Specifically, the FDA stated:

> As part of continued action to protect the American public, **the U.S. Food and Drug Administration is warning consumers and health care professionals about hand sanitizer products containing methanol, or wood alcohol — a substance often used to create fuel and antifreeze that is not an acceptable active ingredient for hand sanitizer products and can be toxic when absorbed through the skin as well as life-threatening when ingested**. The agency has seen an increase in hand sanitizer products that are labeled to contain ethanol (also known as ethyl alcohol) but that have tested positive for methanol contamination. State officials have also reported recent adverse events from adults and children ingesting hand sanitizer products contaminated with methanol, including blindness, hospitalizations and death.

> The agency continues to warn the public not to use specific products listed here and is communicating with manufacturers and distributors of these dangerous products about recalling them. The FDA also continues to quality-test hand sanitizers, including testing products entering the country through the U.S. border, and maintains a list of FDA-tested and recalled hand sanitizers on the agency's website, which will be continually updated as dangerous products are discovered. https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-hand-sanitizers-methanol

> "All Americans should practice good hand hygiene, which includes using alcohol-based hand sanitizer if soap and water are not readily available. **Unfortunately, there are some companies taking advantage of the increased usage of hand sanitizer during the coronavirus pandemic and putting lives at risk by selling products with dangerous and unacceptable ingredients. Consumers and health care providers should not use methanol-containing hand sanitizers,"** said FDA Commissioner Stephen M. Hahn, M.D. "The FDA remains committed to working with manufacturers, compounders, state boards of pharmacy and the public to increase the safe supply of alcohol-based hand sanitizers. This includes staying vigilant and continuing to take action when quality issues with hand sanitizers arise."

> In June, the FDA warned consumers about products manufactured by Eskbiochem, which contained methanol. Since then, voluntary recalls have been conducted by several of Eskbiochem's distributors and the agency is recommending additional companies recall their hand sanitizer products.

The agency urges consumers to be cautious since some of these products may still be found at retail outlets or for purchase online.

**The FDA recommends consumers immediately stop using these hand sanitizers and dispose of the bottle in a hazardous waste container, if available, or dispose of as recommended by your local waste management and recycling center.** Do not flush or pour these products down the drain or mix with other liquids.

**Methanol exposure can result in nausea, vomiting, headache, blurred vision, permanent blindness, seizures, coma, permanent damage to the nervous system or death. Although people using these products on their hands are at risk for methanol poisoning, young children who accidentally ingest these products and adolescents and adults who drink these products as an alcohol (ethanol) substitute are most at risk.** Consumers who have been exposed to hand sanitizer containing methanol and are experiencing symptoms should seek immediate medical treatment for potential reversal of toxic effects of methanol poisoning.

While methanol-containing hand sanitizers are more life-threatening than others, the FDA urges all consumers not to drink any hand sanitizer product. This is particularly important for young children, especially toddlers, who may be attracted by the pleasant smell or brightly colored bottles. During the pandemic, poison control centers have had an increase in calls about accidental ingestion of hand sanitizer, and it is important that adults keep these products out of reach of children and monitor young children's use.[2]

18.     On July 8, 2020, the FDA added each of Defendant's Products to the list of hand sanitizer products that were labeled to contain ethanol, but that in fact were contaminated with methanol, and that, accordingly, could not be used by consumers.[3]

19.     On July 27, 2020, the FDA reiterated its warning regarding the presence of methanol in hand sanitizers, and again instructed consumers not to use any of the hand sanitizers, including all of Defendant's Products, that were on the list of hand sanitizers found to be

---

[2] https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-takes-action-warn-protect-consumers-dangerous-alcohol-based-hand (last accessed August 10, 2020) (bolding added).

[3] https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-hand-sanitizers-consumers-should-not-use (last accessed August 10, 2020).

contaminated with methanol.  Indeed, the FDA stated that a consumer had died through the use of one of Defendant's Products.  Specifically, the FDA stated:

> The U.S. Food and Drug Administration continues to warn consumers and health care professionals not to use <u>certain</u> alcohol-based hand sanitizers due to the dangerous presence of methanol, or wood alcohol – a substance often used to create fuel and antifreeze that can be toxic when absorbed through the skin as well as life-threatening when ingested. The agency has also taken additional action to help prevent certain hand sanitizers from entering the United States by placing them on an <u>import alert</u>. The FDA is proactively working with manufacturers to recall products and is encouraging retailers to remove products from store shelves and online marketplaces. As part of these actions, a <u>warning letter</u> has been issued to Eskbiochem S.A. de C.V. regarding the distribution of products labeled as manufactured at its facilities with undeclared methanol, misleading claims –including incorrectly stating that FDA approved these products—and improper manufacturing practices.

> The FDA first <u>warned</u> about some of the methanol-containing hand sanitizers being sold in retail stores and online in June. The agency <u>issued a further warning</u> earlier this month about an increasing number of adverse events, including blindness, cardiac effects, effects on the central nervous system, and hospitalizations and death, primarily reported to poison control centers and state departments of health. The agency continues to see these figures rise.

> "Practicing good hand hygiene, which includes using alcohol-based hand sanitizer if soap and water are not readily available, is an important public health tool for all Americans to employ. **Consumers must also be vigilant about which hand sanitizers they use, and for their health and safety we urge consumers to immediately stop using all hand sanitizers on the FDA's <u>list</u> of dangerous hand sanitizer products," said FDA Commissioner Stephen M. Hahn, M.D. "We remain extremely concerned about the potential serious risks of alcohol-based hand sanitizers containing methanol. Producing, importing and distributing toxic hand sanitizers poses a serious threat to the public and will not be tolerated.** The FDA will take additional action as necessary and will continue to provide the latest information on this issue for the health and safety of consumers."

> **The agency has posted a <u>do-not-use list</u> of dangerous hand sanitizer products, which is being updated regularly. In most cases, methanol does not appear on the product label.**

**However, methanol is not an acceptable ingredient in any drug, including hand sanitizer, even if methanol is listed as an ingredient on the product label.** The FDA's ongoing testing has found methanol contamination in hand sanitizer products ranging from 1% to 80%.

**Importantly, the FDA is urging consumers not to use any hand sanitizer products from the particular manufacturers on the list even if the product or particular lot number are not listed since some manufacturers are recalling only certain – but not all – of their hand sanitizer products. Manufacturers' failure to immediately recall all potentially affected products is placing consumers in danger of methanol poisoning. <u>One of the reported deaths is associated with Blumen Hand Sanitizer, distributed by 4e North America and manufactured by 4E Global in Mexico, who recently expanded its recall to include additional lots of its hand sanitizer products.</u>** Additionally, the FDA is strongly urging distributors and retailers to stop distributing and selling hand sanitizers manufactured by the firms on the list immediately, even if the particular product is not included in a recall, due to the risk of methanol poisoning.

When identifying hand sanitizers from the FDA's do-not-use list, consumers should look for one or more identifiers from the list that match the product's labeling, including:

- Manufacturer name
- Product name
- National Drug Code (NDC) number

If any of the identifiers (name, company, or NDC) match a product on the list, the FDA urges consumers to immediately stop using the hand sanitizer. Dispose of the hand sanitizer bottle in a hazardous waste container, if available, or dispose of as recommended by local waste management and recycling centers. Do not flush or pour these products down the drain or mix with other liquids.

Methanol exposure can result in nausea, vomiting, headache, blurred vision, permanent blindness, seizures, coma, permanent damage to the nervous system or death. Although people using these products on their hands are at risk for methanol poisoning, young children who ingest these products and adolescents and adults who drink these products as an alcohol (ethanol) substitute are most at risk. Consumers who have been exposed to hand sanitizer containing methanol and are experiencing symptoms

should seek immediate medical treatment for potential reversal of
the toxic effects of methanol poisoning.[4]

20. Following the FDA warnings of methanol, on July 11, 2020, 4e Brands issued a recall of 10 bottle sizes of Blumen-branded hand sanitizers .[5]  However, just a few weeks later on July 24, 2020, 4e Brands issued a total recall on *all* hand sanitizer products which it manufactured, including  all Products at issue in this lawsuit.[6]  The recall specified that it included "all product[s] manufactured by 4e within expiration, regardless of the size, UPC, or lot number."  4e Brands admitted that the Products are being recalled due to a presence of methanol which poses a significant health risk.

21. Defendant knew that its Products were contaminated with methanol and suffered from the Defect at the time of sale, or were grossly reckless in failing to prevent its Products from being contaminated with methanol and suffering from the Defect.

22. However, Defendant's recall was woefully insufficient.  The recall was done so that 4e could claim it did the right thing in response to the Product Defect, when in fact the recall was calculated to protect 4e Brands' profits by ensuring as few returns as possible.  Instead of publicly offering an immediate refund, 4e Brands instructed consumers to "stop using the product and return it to the place of purchase," and that "[c]onsumers should contact their physician or healthcare provider if they experienced any problems."[7]  As an initial matter, most consumers could not obtain a recall for the simple fact that they had discarded the Products either after use or after learning of the Defect, meaning that they could not take the products in to the

---

[4] https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-reiterates-warning-about-dangerous-alcohol-based-hand-sanitizers (last accessed August 10, 2020) (bolding added).

[5] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/4e-brands-north-america-issues-nationwide-voluntary-recall-hand-sanitizer-due-potential-presence (last accessed August 10, 2020).

[6] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/4e-brands-north-america-issues-expanded-nationwide-voluntary-recall-hand-sanitizer-due-potential (last accessed August 10, 2020).

[7] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/4e-brands-north-america-issues-expanded-nationwide-voluntary-recall-hand-sanitizer-due-potential (last accessed August 10, 2020).

place of purchase for a refund. And, still other consumers that tried to follow Defendant's instruction to return the products to the place of purchase could not obtain a refund in such manner either. For instance, Plaintiff Donadio attempted to return the Product to the Dollar Tree Store at which she made the purchase but was unsuccessful in returning the product or getting a refund.

23. Defendant also has a page of its website dedicated to the recall. *See* https://www.blumensanitizerrecall.expertinquiry.com/. However, the word "refund" does not appear anywhere on Defendant's website, and there is no indication that Defendant is providing consumers with any refunds of any kind. Instead, consumers are instructed to enter the Products' UPC and Lot numbers to "register" the Products on Defendant's website and to determine whether the relevant Products are encompassed within the recall. But, as discussed above, the requirement for customers to enter UPC and Lot numbers is designed to frustrate customers' attempts at refunds, as the recall includes *all UPC and Lot numbers*.

## CLASS ALLEGATIONS

24. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

25. Plaintiffs Katherine Pepe, Patricia Donadio, June Vonderchek also seek to represent a subclass of all Class Members who purchased the Products in the State of New York (the "New York Subclass").

26. Plaintiff Sanders also seeks to represent a subclass of all Class Members who purchased the Products in the State of New Jersey (the "New Jersey Subclass").

27. At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendant's Products, Plaintiffs believe that Class and Subclass members are so numerous that joinder of all members is impracticable.

28.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include, but are not limited to:

(a)    whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(b)    whether Defendant's conduct was unfair and/or deceptive;

(c)    whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class;

(d)    whether Plaintiffs and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

29.    With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated New York's General Business Law sections 349 and 350.

30.    Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products, and Plaintiffs sustained damages from Defendant's wrongful conduct.

31.    Plaintiffs will fairly and adequately protect the interests of the Class and Subclass and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Class or the Subclass.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33.    The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged

acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class or Subclass members are not parties to such actions.

**COUNT I**

**(Breach Of Express Warranty)**

34.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

35.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

36.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained "70% Ethyl Alcohol" or listed ethyl alcohol as the active ingredient, and prominently stated that each of the Products were "Hand Sanitizer[s]" on the Products' labels.

37.     But the Products are not, in fact, "Hand Sanitizers" – they are toxic liquids that are so dangerous that the FDA advises consumers to not even dump them into the toilet. The Products cannot be used as Hand Sanitizers and are not, accordingly, Hand Sanitizers. Further, the listed "active ingredient" in the Products is methanol, not "ethanol," which make the products unsafe and unable to be used for their intended purpose.

38.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained methanol, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products were not Hand Sanitizers; (c) they paid a price premium for the Products due to Defendant's promises that 4e Brands Products contained ethyl alcohol or ethanol as an active ingredient and could be used as hand sanitizers; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT II

### (Breach of Implied Warranty of Fitness and Merchantability)

39.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

40.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

41.     Defendant is, and at all relevant times was, a merchant engaged in the business of manufacturing and distributing, among other things, the Products.

42.     Plaintiffs and the Class Members purchased the Products.

43.     Defendant is a manufacturer and merchant with respect to goods of this kind, which were sold to Plaintiffs and other consumers, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable and that they were fit for their intended use as hand sanitizer.

44.     However, Defendant breached that warranty implied in the contract for the sale of goods in that the Products are completely unusable, lack even the most basic degree of fitness for ordinary or intended use, and are not safe for human use as set forth in detail herein above.

45.     The Products are defective and unusable because they were distributed to the public containing a harmful Defect, and because the Defect was substantially likely to manifest through the customary and intended use of the Products.  As a result, the Products were not usable and dangerous to the health of consumers.

46.     Defendant admitted that the Products were completely unusable and unfit for normal use when it initiated the recall described in detail herein above.

As a direct and proximate result of this breach of warranty by Defendant, Plaintiffs and class members have been damaged by paying monies for products that are completely unusable and unfit for their intended purpose.

47.     Plaintiffs seek damages in an amount to be proven at trial for the injuries suffered from Defendant's breach of the implied warranties.  The damages suffered by Plaintiffs and the Class Members include, but are not limited to, the monies paid to Defendant for the Products.

48.     As a result of Defendant's conduct, Plaintiffs did not receive goods as impliedly warranted by Defendant to be merchantable.

## COUNT III

### (Unjust Enrichment)

49.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

50.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

51.     Plaintiffs and Class members conferred benefits directly on Defendant by purchasing the Products, and by Defendant retaining profits and the revenue from the sale of the Products even though the Products cannot be used for their principal intended purpose and are worthless.

52.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for use as hand sanitizers, or that the Defect was substantially likely to manifest through the customary and intended use of the Products.  These omissions caused injuries to Plaintiffs and Class members because they would not have purchased the Products if the true facts were known.

53.     Retention of those moneys also is unjust and inequitable because, as alleged above, Defendant commenced an ineffective recall that was calculated to result in few returns, and generally no refunds, thereby protecting profits and revenue Defendant collected from selling the defective products.

54. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution and other relief to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

## COUNT IV

### (Violation Of New York's General Business Law § 349)

55. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56. Plaintiffs Katherine Pepe, Patricia Donadio, June Vonderchek, and Joseph Sanders bring this claim individually and on behalf of the proposed New York Subclass against Defendant.

57. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

58. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

59. Plaintiffs and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

60. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that Products contained "70% Ethyl Alcohol" or contained ethanol as an active ingredient , that the Products were Hand Sanitizers or could be used as Hand Sanitizers, and by failing to disclose the presence of methanol in the Products.

61. The foregoing deceptive acts and practices were directed at consumers.

62. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Products to induce consumers to purchase same.

63. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

64. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs and members of the New York Subclass have sustained from having paid for and consumed Defendant's products.

65. As a result of Defendant's violations, Plaintiffs and members of the Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained methanol, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products were not Hand Sanitizers and could not be used as Hand Sanitizers; (c) they paid a price premium for the Products due to Defendant's promises that the Products contained ethyl alcohol or ethanol as an active ingredient and could be used as hand sanitizers; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

66. On behalf of themselves and other members of the New York Subclass, Plaintiffs seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT V

### (Violation Of New York's General Business Law § 350)

67. Plaintiff hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

68. Plaintiffs Katherine Pepe, Patricia Donadio, June Vonderchek, and Joseph Sanders bring this claim individually and on behalf of the proposed New York Subclass against Defendant.

69. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

70. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

71.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

72.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

73.     Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

74.     Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

75.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, Plaintiffs and the Subclass have suffered and continue to suffer economic injury.

76.     As a result of Defendant's violations, Plaintiffs and members of the Subclass have suffered damages due to said violation because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained methanol, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products were not Hand Sanitizers and could not be used as Hand Sanitizers; (c) they paid a price premium for the Products due to Defendant's promises that the Products contained ethyl alcohol or ethanol as an active ingredient and could be used as hand sanitizers; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

77.     On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VI

### (Negligent Misrepresentation)

78. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

79. Plaintiffs brings this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

80. As discussed above, Defendant misrepresented that the Products contained "70% Ethyl Alcohol" or ethanol and could be used as hand sanitizers, and failed to disclose the presence of methanol. Defendant had a duty to disclose this information.

81. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

82. At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Products.

83. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Products.

84. Plaintiffs and Class members would not have purchased the Products if the true facts had been known.

85. The negligent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII

### (Violation Of The New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 et seq.)

86. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

87. Plaintiff Sanders brings this claim individually and on behalf of the members of the New Jersey Subclasses against Defendant.

88. The Consumer Fraud Act prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

89. Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of methanol in the Products, as described above, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of electricity in violation of the Consumer Fraud Act.

90. Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase the Products.

91. Defendant failed to inform customers that the Products contain methanol. That information would have been material to any consumer deciding whether to purchase the Products.

92. Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

93. Plaintiff Sanders and the other members of the New Jersey Subclass suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the Consumer Fraud Act.

94. As a consequence of Defendant's wrongful actions, Plaintiff Sanders and the other members of the New Jersey Subclass suffered an ascertainable monetary loss based on the price they paid for the Products, and/or the difference in the price they paid versus the price they would have been charged had Defendant disclosed that the Products contain or may contain methanol and suffer from the Defect.

95. Plaintiff Sanders and other members of the New Jersey Subclass suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have purchased the Products if the true facts concerning methanol had been known.

96. By reason of the foregoing, Defendant is liable to Plaintiff Sanders and the other members of the New Jersey Subclass for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

97. Defendant knows full well that selling hand sanitizer with methanol is unconscionable, and the misrepresentations it makes with regard to the Products were made for the sole purpose of inducing consumers to purchase the Products irrespective of any health consequences. Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff Sanders and the other members of the New Jersey Subclass. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses members;

b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For pre-judgment interest on all amounts awarded;

f. For an order of restitution and all other forms of monetary relief;

g. For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demands a trial by jury of all issues so triable.

Dated: December 1, 2020                            Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____*/s/ Philip L. Fraietta*_____
                  Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7410
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

Greg Blankinship
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com

Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
Fax: (973) 228-0303
mrm@mazieslater.com

*Attorneys for Plaintiffs*